1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LISA MARIE UPTAIN,

          Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.

No. 1:23-cv-1515-GSA

**ORDER DIRECTING ENTRY OF
JUDGMENT IN FAVOR OF DEFENDANT
AND AGAINST PLAINTIFF**

**(Doc 10, 14)**

### I.     Introduction

Plaintiff Lisa Marie Uptain appeals the decision of the Commissioner of Social Security denying her application for supplemental security income (SSI) under Title XVI of the Social Security Act.[1]  Because substantial evidence and applicable law support the ALJ's decision, the appeal will be denied.

### II.     Factual and Procedural Background

On November 5, 2019 Plaintiff applied for SSI.  The applications were denied initially on August 5, 2020, and on reconsideration on March 24, 2021.  The ALJ held a hearing on November 22, 2022.  AR 53–83.  On January 5, 2023, the ALJ issued an unfavorable decision.  AR 34–48. The Appeals Council denied review on August 31, 2023 (AR 1–6) and this appeal followed.

### III.     The Disability Standard

Under 42 U.S.C. §405(g), this court has the authority to review the Commissioner's denial of disability benefits.  Reversal is appropriate when the ALJ's findings are based on legal error or unsupported by substantial evidence."  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is that which could lead reasonable minds to accept a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge.  Docs. 7, 9.

The court must consider the record as a whole, not isolate a specific portion thereof. *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).   If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.   *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).   "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. § 1382c(a)(3)(A).   An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

A disability claim is evaluated using five-step analysis.  20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff  bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV. The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of November 5, 2019.  AR 36.  At step two the ALJ found that Plaintiff had the following severe impairments: depressive disorder, obesity, borderline intellectual functioning, and osteoarthritis.  AR 36.  The ALJ also determined at step two that Plaintiff's diabetes and seizure disorder were not severe.  AR 36–37.

At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 37–39.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 416.967(b) with the following limitations:

> occasionally climbing ramps and stairs; no climbing ladders and scaffolds; no work around unprotected heights; avoid concentrated exposure to moving mechanical parts; is limited to understanding, remembering, and following one to-two step instructions; and is capable of interacting with supervisors, coworkers and the public occasionally.

AR 39–47.

At step four the ALJ concluded that Plaintiff had no past relevant work.  AR 47.  At step five, in reliance on the VE's testimony, the ALJ concluded that there were jobs existing in significant numbers in the national economy which Plaintiff could perform: Cleaner, Housekeeper; Merchandise Marker; and Paper Pattern Folder.  AR 47–48.  Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since the application date of November 5, 2019.  AR 48.

### V. Issues Presented

Plaintiff asserts that the ALJ failed to properly evaluate the medical opinions.

#### A. Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity.  *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2

(C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment."  *Robbins,* 466 F.3d at 883.  *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions, and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. § 404.1520c(a).  Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors.  20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors and the agency will articulate how the factors of supportability and consistency are considered.  *Id.*  "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."  *Woods v. Kijakazi*, 2022 WL 1195334, (9th Cir. Apr. 22, 2022) at *6.

With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1).  Regarding "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

**B.** **Analysis**

**1.** **PA Rodriguez; Dr. DeSouza**

Dr. DeSouza, a non-examining state agency physician, reviewed Plaintiff's medical file at the initial level and opined that due to morbid obesity and knee pain, Plaintiff "will benefit from use of a cane for prolonged/rough terrain ambulation" and should alternate between sitting and standing every hour for 25 seconds to avoid stasis.  AR 113.  Similarly, Plaintiff's treating provider, PA Rodriguez, recommended in a treatment note that Plaintiff use a cane for ambulation.[2]  AR 467.

The ALJ rejected Dr. DeSouza's opinion as to cane use because "The claimant is noted to present for appointments without the use of a cane or other assistive device."  AR 44.  Plaintiff contends that in fact most treatment notes were silent as to whether Plaintiff used a cane or not.  MSJ at 6, Doc. 12.  In response, Defendant notes that the July 2020 consultative examination reflects that Plaintiff did not use a cane and demonstrated a normal gait.  Resp. at 5, Doc. 14 (citing AR 425).  Defendant further emphasizes that Plaintiff did not have a cane at the hearing and

---

[2] Plaintiff disputes the sufficiency of the ALJ's reasoning for discounting Dr. DeSouza's opinion concerning cane use, and sets forth a distinct third argument section solely based on that issue arguing that the ALJ did not address PA Rodriguez's opinion at all.  Because the ALJ's reasoning for rejecting Dr. DeSouza's opinion as to the need for cane use was sufficient, it does not seem necessary that the ALJ separately address PA Rodriguez's treatment note recommending cane use.

testified she could walk without one, though she did add the qualifier that her ability to do so was pain dependent. AR 66. Plaintiff suggests that notwithstanding this evidence, "Plaintiff's treating physician's assistant clearly believed a cane was necessary," and Plaintiff's morbid obesity with BMI of 50 and knee pain were supporting facts.

However, the issue is not how firmly Dr. DeSouza or PA Rodriguez believed that a cane was necessary, nor how clearly they explained that opinion, nor how supported that opinion was <u>if Plaintiff did not actually use a cane</u>. The RFC is "the most [one] can still do despite [one's] limitations" not the most a physician believes (even justifiably so) that the claimant can do. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The only two instances that speak directly to the issue were the consultative examination and the administrative hearing, both of which explicitly noted that no cane was used. AR 425; 66.

The fact that the remaining exams were silent on the issue simply speaks to a lack of evidence in Plaintiff's favor and does not undermine the substantial evidence suggesting cane use was not strictly necessary. And this is so even though both clinicians believed it was a medical necessity.

As to the ALJ's additional reasoning for rejecting the cane use requirement and the sit/stand alternation requirement, Plaintiff argues as follows:

> Additionally, the ALJ relied on Plaintiff's ability to play sports with Special Olympics (Tr. 44). However, the program referenced by the ALJ was a disability sports program tailoring activities specifically for individuals with *physical and mental disabilities* (Tr. 72). Therefore, Plaintiff's ability to attend such a sports program was not necessarily at odds with her assessed need for a cane or to alternate sitting and standing. At a minimum, the ALJ should have developed the record with regard to the physical demands of the sports program before assuming that such activity contradicted Dr. DeSouza's opinion.

MSJ at 6 (emphasis added)

First, contrary to Plaintiff's assertion, Special Olympics is not tailored to individuals with physical and intellectual/mental disabilities. Special Olympics is tailored to individuals with

intellectual disabilities, whereas Paralympics is primarily tailored for individuals with physical disabilities.[3]  Though Plaintiff has both physical and intellectual impairments, only the former are relevant to the current discussion of the cane requirement and sit/stand alternation requirement. Thus, as the ALJ found, Plaintiff's participation in Special Olympics could indeed undermine allegations of physical disability depending on the nature of the activities.

Second, the ALJ did not merely rely on Plaintiff's participation in Special Olympics but did inquire about the activities at the hearing and described them in the decision, including golfing, playing goalie, and bowling.  AR 44, 75.  Those activities are in tension with the alleged need for a cane to walk.  As for the need to alternate from sitting and standing for 25 seconds hourly, there's no apparent reason why that would be inconsistent with these activities.  However, the same could be said of the jobs described by the VE – Cleaner, Housekeeper; Merchandise Marker; and Paper Pattern Folder.  It is highly unlikely that a 25 second break from sitting, once per hour, would be work preclusive.

In sum, the ALJ committed no error with respect to the opinions of Dr. DeSouza and PA Rodriguez concerning the need for a cane to walk, and the need to alternate from sitting and standing for 25 seconds hourly.

## 2.   **Dr. Bowerman**

On July 20, 2020, Dr. Bowerman conducted a consultative psychological examination at the request of the agency.  Dr. Bowerman noted that intellectual functioning was in the borderline range, with verbal comprehension, working memory, processing speed, and full scale IQ ranging from bottom 3% to bottom 10%.  AR 426–27.

Dr. Bowerman opined that Plaintiff's ability to understand, remember, and carry out <u>simple one or two-step job instructions is mildly impaired</u>, that her ability to understand/remember/carry

---

[3] *See* https://resources.specialolympics.org/sports-essentials/special-olympics-and-paralympics

out detailed but uncomplicated job instructions is mildly to moderately impaired, and that her ability to understand/remember/carry out <u>an extensive variety of technical and/or complex job instructions is moderately to markedly impaired.</u>  AR 430.

Briefly by way of background,

In the *Dictionary of Occupational Titles*, each job description includes a General Educational Development ("GED") definition that "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." *Salas v. Astrue*, 2011 WL 2620370 at *5 (E.D. Cal. June 29, 2011) (quoting *Grigsby v. Astrue*, 2010 WL 309013 at *2 (C.D. Cal. Jan. 22, 2010)). The GED includes a scale for "reasoning development," which ranges from Level 1 (low) to Level 6 (high). *Id.* The *Dictionary of Occupational Titles* indicates Reasoning Levels 1 through 3 require the following cognitive functioning:

Level 1: Apply commonsense understanding to carry out <u>*simple one-or two-step instructions*</u>. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

Level 2: Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

Level 3: Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

*Cervantes v. O'Malley*, No. 1:22-CV-1565 JLT GSA, 2024 WL 1173827, at *3–4 (E.D. Cal. Mar. 19, 2024) (citing DOT- Appendix C, Section III, 1991 WL 688702; *Rounds*, 807 F.3d at 1002-1003) (emphasis added).

Plaintiff contends that the ALJ failed to incorporate the "moderate to marked deficits in memory."  MSJ at 8.  Yet the only moderate to marked limitation Dr. Bowerman identified was in regard to understanding/remembering and carrying out "an extensive variety of technical and/or complex job instructions."  The ALJ did not find Plaintiff could understand/remember/carry out such instructions, but rather limited Plaintiff to one to two-step instructions, which Dr. Bowerman opined was only mildly limited.  Thus, the RFC is consistent with that portion of Dr. Bowerman's opinion.

Further, the VE identified two jobs with a reasoning level of R1[4] which, according to the DOT appendix and Ninth Circuit authority as cited above, is consistent with a limitation to one to two-step tasks. *See Cervantes v. O'Malley*, No. 1:22-CV-1565 JLT GSA, 2024 WL 1173827, at *3–4 (E.D. Cal. Mar. 19, 2024) (citing DOT- Appendix C, Section III, 1991 WL 688702; *Rounds*, 807 F.3d at 1002-1003).

Plaintiff further contends that the ALJ failed to account for Dr. Bowerman's opinion that Plaintiff was mild to moderately limited in her ability to deal with changes in a work setting. However, "district courts throughout the Circuit have [] concluded a claimant's low tolerance for stress or moderate limitations in dealing with changes are encompassed in a residual functional capacity of simple, repetitive tasks." *Henry v. Colvin*, No. 1:15-CV-00100-JLT, 2016 WL 164956, at *18 (E.D. Cal. Jan. 14, 2016) (collecting cases). That is even more evident here given the RFC limited Plaintiff to one to two-step tasks, which is more restrictive than simple and repetitive tasks.

Plaintiff further contends that the ALJ failed to account for moderate limitations in concentration, persistence, and pace. Courts have occasionally relied, as the Commissioner does here, on the Ninth Circuit's opinion in *Stubbs-Danielson* for the proposition that a limitation to simple and routine tasks can serve as a catchall for moderate mental limitations insofar as *Stubbs* held that an ALJ appropriately translated concentration limitations into "the only concrete restrictions available to him," namely a limitation to simple tasks. *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Although courts have often refuted the suggestion that a limitation to <u>simple and routine</u> (or repetitive) tasks can serve as a catchall for moderate mental limitations,[5] there appears to be no authority reaching the same conclusion with respect to a limitation to <u>one to two-step job instructions,</u> which was the RFC limitation here, and which is even more restrictive

---

[4] Cleaner, Housekeeper (DOT 323.687-014); Paper Pattern Folder (DOT 794.687-034).
[5] *See Macias v. Saul,* No. 1:19-CV-01187-BAM, 2021 WL 856423, at *6 (E.D. Cal. Mar. 8, 2021) (collecting cases).

per the DOT appendix.  From a practical standpoint, if such a limitation is not a sufficient encapsulation of moderate limitations in concentration, persistence, and pace, then it is not clear what the RFC should reflect.  Indeed, Plaintiff offers no explanation as to what would be a more appropriate encapsulation thereof in addition to or in lieu of what the ALJ included in the RFC here.

Finally, Plaintiff contends that "Perhaps most significant, the ALJ found that restricting Plaintiff to occasional interaction with others accommodated Plaintiff's impaired ability to interact with others in a socially appropriate manner," notwithstanding evidence that Plaintiff was prone to outbursts, manipulation and other socially inappropriate behavior.  MSJ at 9 (citing AR 554, 539).  Plaintiff argues, in reliance on unpublished district court authority, that in such situations it is appropriate not only to limit the *frequency* of social contact-- such as "occasional" as the RFC reflects here-- but to also limit the *depth* of the social contact, such as superficial.

Although the phrase "superficial contact" does occasionally appear in an RFC formulation, there is no requirement that the RFC address depth of social contact as a distinct concept from frequency of social contact, and the lone citation Plaintiff provides to a district court opinion appears to be the only example of such a holding.

Further, the limitation must be viewed in the context of the RFC as a whole, which again here limited Plaintiff to one to two-step tasks.  Where the employee is engaged in tasks so minimally demanding from a cognitive perspective, it is reasonable to conclude that the depth of social interaction about such tasks would be comparably minimal.  As such, there is no precedential basis or logical basis to impose a distinct requirement that the ALJ specify the depth of social interaction in addition to frequency thereof.

In sum, the ALJ adequately accounted for Dr. Bowerman's opinion with an RFC limiting Plaintiff to one to-two step instructions and occasional interaction with supervisors, coworkers and

the public.

### VII.   Conclusion and Order

For the reasons stated above, substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.  Accordingly, it is ordered that:

1.  Plaintiff's motion for summary judgment (Doc. 12) is **denied**.

2.  Defendant's cross motion (Doc. 14) is **granted.**

3.  The Commissioner's decision is **affirmed**.

4.  The Clerk of Court is directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Lisa Marie Uptain.

IT IS SO ORDERED.

Dated:   **November 20, 2024**                         **/s/ Gary S. Austin**
                                                                UNITED STATES MAGISTRATE JUDGE